Case number 17-4110, Naqis Crochran v. Columbus City Schools, et al. Argument not to exceed 15 minutes per side. Mr. Fitrakis, you may proceed for the appellants. It pleases the Court, I am Robert Fitrakis, representing Naqis Crochran, the plaintiff appellant. The course, let me just say that as we start here, this is really about a child with autism, severe autism, in the Columbus public school system. One that ended up having a body sock placed over his head. That, again, was not in his IEP, his individual educational plan, nor with the permission of the parents. He fell, he knocked out a tooth, he loosened the other tooth, and has had $19,000 in dental bills as a result of that. So we need to always keep that in mind as we pursue justice. The main issue I'd like to focus upon is the standard of review. A court considering summary judgment, as you well know, motion considers the fact in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. I would argue that that was not done in this instance. Was a companion case filed on negligence? After the decision by the federal court, we filed two essential tort cases at the state level. The answer is yes. Yes. Okay. Okay. So that I understand, this is a 1983 case. Correct. For a violation of constitutional rights. Yes. We're arguing, as a 1983 case, that the appellant demonstrated a genuine dispute of material facts regarding an appellee's violation of Nikese Cochran's 14th Amendment due process rights. The district court contended that there were no facts showing Plummer's conduct to be brutal, demeaning, or harmful. This test applies to corporal punishment cases, not necessarily this case. What's your best case that you're relying upon? The case that we're relying upon is in Domingo v. Kowalski. In the present case, the appellants did not assert claims for release against corporal punishment. What the other side is doing is essentially taking a case involving corporal punishment in an individual with an IED who had had violent outbursts. I don't know. It strikes me as probably appropriately analogous. Were there violent outbursts? No. By this child? No, there was laughing, excessive laughing. Well, I tore up a calendar, went to the teacher's desk and tore up, or maybe not called a teacher, but Ms. Plummer's desk or somebody's desk nearby tore up something. Is it not sort of out-of-control behavior? It is in that instance, but if you're going to control out-of-control behavior, you have to have a protocol. There has to be a process. You have to be trained on the body sock. That was the policy of the school district, that you were trained. She was not trained. That was the first time she ever used it. She put them on a hard surface, which goes against the training, as you can see from Amy Dennis. How much training do you have to have to use one of these body socks? I never heard of one before, so I don't know. Well, you have to be a physical therapist, a licensed physical therapist unit, or to be trained on it by a physical therapist. I don't know if any of you are familiar with it, but you can go online and look at it. A lot of it is this movement that completely is covering you, but part of the training would seem to some extent to be common sense. When you put it over somebody's head, particularly somebody like Nikise, who has a problem with posture and balance, you don't put them on a hardwood floor. In fact, Amy Dennis, who worked for the school, says, you sit him down. She wasn't trained, so she did it wrong. Yes. Right. I thought that the defense was there were pedagogical reasons for using this technique, albeit using it untrained and in ways that were not advised. Well, that's kind of curious. They make a vague reference. It was referenced in the IEP plan. I think in the same way joy is referenced by the hangman because he's going to end your suffering. The reference that we're talking about is, well, they talked about sensory perception. But what they leave out is that it was in regards to writing. There was no real need, and the court itself gets it right, the trial court, that there was no pedagogical purpose for putting a body sock over a coat, over a backpack, on a severely autistic kid who's acting out. Well, who also, it wasn't done forcibly. She asked him if he wanted it, and he said yes. I mean, this is curious because Columbus Public School fought in the common police court to have Nakis ruled incompetent to testify in a planned trial there, and now suddenly he's running the classroom, an autistic kid who's acting out. I mean, this is something you have to train for. Nakis obviously is not trained. He has no opinion. He's never seen the thing before. I'm sorry. Can we go back because I'm really not sure. Can you describe your constitutional claim to me? The Constitution would start with an illegal seizure, is that essentially by putting this body sock on them and there's a long train. The courts are very reluctant to allow that activity unless there's a pedagogical reason for it. So we're arguing under the Fourth Amendment that it is in fact an illegal seizure. We're arguing as well. So under the Fourth Amendment, public school students are protected from unreasonable seizures by school officials and employees. And we reference again, cite New Jersey versus TLO. Are you suggesting that it's a violation of the Fourth Amendment if any teacher tries to put one of these socks on someone without any training? Is that the reason? It might depend on the circumstance. I think if you put their coat over their bookcase, if you put them on a hard surface, I think you have in fact... I think you've got to look at... And I really think it's up to a jury to decide that. I think you've got to look at all the facts that are in dispute and let the jury decide whether or not that's a seizure. And then you have the question of qualified immunity? Again, you mean through the school district raising that... Which raises to the standard of recklessness, which again I would argue is a jury issue. I mean, so the standard is, was Courtney Plummer reckless in using that for the first time without any training, without it being in the IEP? It sounds like tort language, doesn't it?  rather than constitutional deprivation of rights. But she did in fact place this over his head. Yes, she did it wrong. We all agree. She did it wrongly, right? But we agree with that. I mean, you've convinced us and the testimony convinces us it shouldn't have been over his head, etc. I would also argue there's 14th Amendment questions as well. Is she the... I'm sorry. Is she a defendant or are you only suing the school district? She's the only defendant. We originally sued other people and through discovery eliminated them and then sued the school district and Ms. Plummer. So both of them were defendants? Yes. Okay, and then... So for the school district, you have to show that... I mean, they're not responsible. There's no respondeat superior, right? With the school district, the question is whether they were aware of the policy, whether they were actually enforcing it or were they engaged in some activity that was reckless. They'll argue they were unaware of the problem. We'll argue that there was a policy actually in place and that's protected under federal law. But what was the policy in place? The policy in place is... And this is where you'd look at Amy Dennis, the director of special ed for the school district, is that everyone had to be trained on how to use this because it was inherently dangerous to put something... And use the wrong way. But it is a known therapeutic method to be used with autistic... Used by physical therapists and trained individuals. And autistic children, right? It has been used by... Testimonies seem to be that it was. Yeah, so if Courtney Plummer had been trained by a physical therapist... If she had done it right, there'd be no constitutional violation. So you agree? Yes. So if the school had a policy that everybody had to be trained to use them, why are they liable? The question of the enforcement, the principal, if you look at his testimony, says that they were allowing it to be used to separate out Nikese from other students. They were using it as restraint and discipline, and that was the policy of the principal himself at the school. They knew what was going on and did nothing to stop... So this wasn't the first time it was used on him? It was the first time it was used on him, but it actually had the name of another boy when it was dug out of the closet at the last second, at the end of the day, and suggested that this is what Nikese needed to correct his behavior. And then is there a mental state that is required for your claim against the individual? Yeah, recklessness. The standard would be that she acted reckless. And how did she act recklessly? Well, she acted recklessly by putting it over his head, by putting it over his coat, by putting it over his backpack, hence restricting him. The fact that it was reckless because it was not in his IEP. The fact that she had him standing, when you see from the various depositions, including members of the school itself, that he should have been sitting, and not on a hard surface. All right, we have your answer, Counsel. Thank you very much. Thank you. You've reserved some time. Yeah. Good. Good morning, Your Honors. May it please the Court, I'm John Albert here representing the appellees. And to make a correction, the Columbus School Board and Columbus City School District was also sued in this case. There was a response that there wasn't a claim against them, but there was a claim against them, and I'll address that. Can you keep your voice up, please? Yes, thank you. A couple things need to be clarified on the facts. As you can tell, the trial court drilled down and just focused on the material facts that were not in dispute. There's been reference that he didn't have good balance, okay? That's not supported by the record. The record supports that. Ms. Plummer said he didn't have balance problems. Well, what does this go to? Topic, sentence, why are we talking about that? Because that goes to whether or not there was. What's the standard? We asked counsel what the standard was. Does it have to be shown to be a constitutional violation? What's the standard? I read that it's sadistically applied or with malice or for no pedagogical reason. I mean, what are we supposed to be looking at rather than getting to the detail? Okay, Your Honor. Please. There are three causes of action here. Right. 1983 action, IDEA, and ADA and Section 504. For the 1983 action, there has to be brutal and inhumane treatment. Does it have to shock the conscience or are you saying that recklessness is the standard? Exactly, Your Honor. Which is it? One is quite different. Judge Seiler is asking whether it's shock the conscience or recklessness. It doesn't say recklessness. It says that the test is brutal, demeaning, harmful, shocking the conscious conduct. You can look at the goal case, 836 F. 3rd. 694, which was cited by the trial court. And then in applying that standard, the court is supposed to look at several other little issues as whether or not there was a pedagogical justification, which means whether it was relating to teaching, and I submit to you it was here, because the body sock was designed to calm him down so he could participate better in class. The court is supposed to look at whether the force was excessive to meet legitimate objective. There was a legitimate objective here. Again, the teacher, at the suggestion of Ms. Shearer, who was familiar with the body sock and who trained Ms. Plummer, showed her how to use it. She's a co-teacher. She's a co-teacher whose son had autism. She grew up with it. She had used it on her son. The school her son went to, she was very familiar with it, and she demonstrated it for Ms. Plummer that day. Ms. Plummer had seen it used in her past with other students. So the allegation that she wasn't trained is not accurate, Your Honor. Did she demonstrate it on a hard floor? Did she demonstrate it standing up? She demonstrated it in the classroom in front of Ms. Plummer, in front of the students, standing up. If you look at the material from the manufacturer with regard to body socks, you're allowed to use it standing up. You're allowed to use it over the child's head. It has a Velcro that can be opened and slipped off the head or over the head. There's even testimony from the teachers here that if he had his backpack on, which there's no real clear evidence that he did, but if he had his backpack and his coat on, that autistic students liked that feel of having a weighted, they even used weighted vests on them. So there's testimony that the backpack and the coat would provide that type of sensory input. There's been that allegation that it wasn't in his IEP. The overwhelming testimony is you don't put a specific device in an IEP because if he goes to another school, they may not have that device. So what you do is you mention what his needs are, and in his IEP it was mentioned that he had sensory needs. What's your best case that you're relying upon here? Well, with regard to the 1983 action and the substantive due process, it would be the Gold case, and the case is cited by Judge Sargas, which are right on point. Bottom line is there's no evidence, Your Honors, that it was being done sadistically to cause harm. The whole purpose was to calm him down so he could participate in class, and there's absolutely no evidence to the contrary. So these are cases dealing with discipline, right, that you're talking about right now? Corporal punishment. I don't believe they're all restricted just to corporal punishment, Your Honor. I think that brutal, inhumane test has been around for, gosh, for 30 years or more, and it covers a whole broad case of substantive due process cases and claims. And negligence is not enough for a 1983 action. We all know that. Judge Cook, you had asked about the standard as well, and the other claim. There was an equal protection claim made at the trial court. That's been abandoned. It wasn't appealed. The only other 1983 action claim that's left is the Fourth Amendment, which is unreasonable and unlawful seizure. The standard for that is there has to be a seizure, number one, okay? And I submit to you that use of a body sock is not a seizure. Okay, but let's say it is. What's the other standards? The second standard is that if it is a seizure, it has to be justified in its inception and permissible in scope. And even if you assume it's a seizure, which it wasn't, because the body sock is designed to do this. It's therapeutic. Exactly, and you can move in it. You can breathe in it. You can shuffle in it. And you're supposed to move and stretch in it because it helps with the sensory needs of an autistic child. But as far as being justified in its inception and permissible in scope, it was needed to calm him down, so it was justified in its inception. And it was a sensory tool designed to do that, so it was permissible in its scope. It's just that simple. So it's our submission there was no evidence to the contrary to raise a genuine issue of material fact on what happened here. And keep in mind that the only two that really know exactly what happened were Ms. Plummer and Ms. Nakis. I mean, there were other aides in the room. They were dealing with other students, and I think when he fell a couple of them noticed and assisted. But Ms. Plummer was three feet away the whole time. He had only been in the body sock less than two minutes, and she said, quiet down, and then he falls. So there's no dispute of fact with regard to that, Your Honors. The other claim is the, well... I thought he fell while she was putting him in it. No, Your Honor, he was already in it. And he was giggling and laughing and said he was having fun, and even in his testimony he said, I accidentally fell. Said what? He said, I accidentally fell. And I asked him, I said, were you having fun? And he said, yes. And I accidentally fell. The other 1983 claim, Your Honors, relates to the Columbus School District, and I would submit to you that it was only pled as vicarious liability, okay? It was never pled that they'd had a wrongful policy. And you can go back and look at the complaint on that, so I submit to you that's just not actionable. The only complaint against the district and the Board of Education was that they were vicariously liable for Ms. Plummer's actions. And I cited the Beard case, which basically says this had never happened before. They had no notice, the district had no notice there was ever a problem with a body sock in the past. And, in fact, they didn't have a policy in place. But they did have these body socks in the classrooms or in the school? They had them, Your Honor, in the occupational therapy department, and also this one was in Ms. Shearer's classroom in her closet there for use with other sensory tools for autistic children. And when she was assisting Ms. Plummer and realized the case was not calming down, she pulled it out and said, why don't you try this? Ms. Plummer said, okay, and she showed her how to use it, and that's what happened. It was just that simple. Does the school district furnish those socks, or do teachers pay for them out of their own pockets, or do we not? The school district furnished this one, Your Honor. Doesn't that make it a policy to use them? I'm sorry, Your Honor? Doesn't that make it a policy to use them if they're in there? Well, they had a policy they could be used, but they didn't have a policy in place that said before you can use it, you have to be an occupational therapist, you have to be a physical therapist, you have to go through formal training. Anybody can buy these on the Internet, and the instructions were provided to the trial court and Internet printouts. There's no special training needed, and it shows you in the instructions how they're used. And again, Ms. Shearer knew how to use them. She showed Ms. Plummer how to use it. The other claim, Your Honors, is the IDEA claim, and I submit to you, Your Honor, that wasn't even mentioned by opposing counsel, and Judge Sargas found that basically there's no IDEA claim here, that because the cause of action is for money damages, for physical injury, there's no claim under the IDEA claim, and it's subsumed under the 1983 claim. The other final constitutional cause of action is ADA and 504, and the case law says you analyze those together under the same standard, which they have to prove he's a qualified individual with a disability, they have to prove that he was excluded from participation or discriminated against with regard to public entity services, and number three, that all that was done due to his disability. Number one, there's no evidence of bad faith or gross misjudgment, as I've already indicated. This was all done in good faith to help calm him down that day, and he accidentally fell. The only claim that I saw in Pallant's brief in this regard was a claim that he was denied access to education because he was in the body sock, which contradicts the whole use of it, was to calm him down so he could better accept the education process. Likewise, Your Honors, I cited cases in the brief that say there's no individual liability for ADA or 504 causes of action, which that would exclude Ms. Plummer, and the only claim against the Board of Education and the public school district was vicarious liability, respondeat superior, for Ms. Plummer's actions. And when you look at the facts, it really comes down to there's no evidence of exclusion or denial of educational benefits. He was in the body sock for less than two minutes, and he fell. How did that exclude him from educational benefits? It simply didn't. Again, it was done to assist in providing the education. And the standard, and I think the trial court cited it, is that a plaintiff has to prove there's more than just an incorrect evaluation or a faulty plan. They have to prove discrimination. And there was no evidence of discrimination in the use of the body sock. They had used it on another student that same day that Nakeese witnessed and the other teachers witnessed. So what evidence of discrimination is there in the record? There's absolutely none. So, Your Honor, for all those reasons, and there were six or seven state causes of action tagged onto this in federal court that Judge Sargis, after he dismissed the federal action, he declined to rule on the state causes of action. Judge Seiler, there has since then been a case filed in Franklin County Common Pleas Court for the state causes of action that is pending. Okay. I don't have any more comments, Your Honor. I just ask that you affirm the trial court. Apparently no questions. Thank you. Thank you. Please, the court. Opposing counsel said he relied on Gohl versus Livonia schools. I'd just like to remind the court that that actually is a four-pronged test. It starts with, was there a pedagogical justification for the teacher's action? The second, were the teacher's actions excessive for meeting his legitimate objectives? Third, did the teacher act in good faith to restore discipline or act for the very purpose of causing harm? And did the student incur serious injury? Appellants cited material facts disputing the contention that Plummer used appropriate instructional and corrective methods. There was no pedagogical justification for Plummer's action. It looked like action taken after a long day of frustration dealing with autistic students. The district court in the present case held that Plummer's conduct was, quote, non-educational in nature. Plummer's actions, I would also argue, were excessive. She used the body sock as a form of intervention to restrain Nakeesh Crocker rather than as a therapeutic tool. Trina Stearns, one of Plummer's instructional assistants, told Franklin County Children's Services that Plummer had covered Nakeesh's face with a body sock. Now, if you look into the record, Amy Dennis, the director for special ed for the schools, told Plummer that Nakeesh Crocker's face should not have been inside the body sock and they should have been sitting down in it. Stearns also said Plummer should have used the body sock on a softer floor. So as much as I respect necessity and instant training, there's no real evidence that she was trained and that there was in fact a policy of the school and in fact it was supposed to be spelled out in the individual educational plan. We would argue that this is the question for a jury. Plummer acted in bad faith, which is defined as a conscious act of wrongdoing or breaching a duty. And what she did is breach the duty to protect the minority autistic child in question, Nakeesh Crocker, by having him stand on a hard floor and cover his face when in fact... Is it true that a child can stretch and remove or open the body sock? It's only Velcro and a child... I'm not sure unless you train the... I mean, having seen the body sock, Nakeesh has a variety of educational disabilities. I'm not sure. There was no testimony in the record anywhere... It's an aside. ...that she instructed him how to open it up if he couldn't breathe or see. Was there any testimony he couldn't breathe? No, but the question was that he was completely covered. I'm thinking in terms of if she was acting in a way that would be logical and worried about it was too restrictive or couldn't breathe because she's putting it on over a coat as well as a bag, and these are supposed to be custom fitted by size. There's very specific sizes. They didn't size them up. They didn't say, this is the right... I think we have your point. Okay, thank you. Counsel, thank you very much. The court has your matter. We will consider it carefully and issue an opinion in due course. Thank you.